**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

EDDY S. HARRIS, SR.                                                                                                PLAINTIFF

v.                                        NO. 4:07CV00601 JLH

CITY OF LITTLE ROCK, ARKANSAS;
LAWRENCE JOHNSON, Chief of Police of
Little Rock, Arkansas; RONNIE SMITH,
Detective of the Little Rock Police Department;
and JOHILDA HARRIS                                                                                         DEFENDANTS

**OPINION AND ORDER**

Eddy Harris, Sr., filed this action against the City of Little Rock; Lawrence Johnson, the Chief of Police of Little Rock; Ronnie Smith, a detective with the Little Rock Police Department; and Johilda Harris (now Johilda Ford, and hereinafter referred to as "Ford"). Harris asserts federal claims under 42 U.S.C. §§ 1983 and 1985 for unlawful seizure and arrest and conspiracy in violation of his Fourth, Eighth, and Fourteenth Amendment rights, and state law claims of false arrest, false imprisonment, malicious prosecution, defamation, and intentional infliction of emotional distress or outrage. The City of Little Rock, Johnson, and Smith filed a motion for summary judgment, arguing that they are protected by qualified immunity. For the following reasons, summary judgment is granted in favor of the defendants on the federal claims. The Court declines to exercise supplemental jurisdiction over the claims arising under laws of the State of Arkansas and therefore dismisses those claims without prejudice.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

The following material facts are undisputed. Johilda Ford is the sister of Eddy Harris, Sr. In 2004, Ford was a witness for the prosecuting attorney in the prosecution of Harris's son, Eddy Harris, Jr., for capital murder. Prior to her testimony, Ford went to the prosecuting attorney's office and reported that Harris had threatened her in an attempt to force her to change her story. Ford claimed that Harris yelled at her and became belligerent. Detective Smith interviewed and obtained a statement from Ford on July 14, 2004, at the request of the deputy prosecuting attorney, John Johnson. Based on his interview of Ford, Smith then interviewed Keisha Epting and Zambia Ford. Harris has admitted that he is refrained from contacting Johilda or Zambia Ford pursuant to a restraining order. Johilda Ford has stated that she testified willingly, without coercion, and without payment of money as a reward. She did receive $1,000 for turning in information to the Crime

Stoppers program in relation to Eddy Harris, Jr. She has also stated that her reports to the prosecuting attorney's office of Harris's alleged threats were made voluntarily.

During his interview of Keisha Epting, Epting told Smith that there was dissension within her family because Johilda Ford was prepared to testify against her brother's son. Epting stated that she witnessed an exchange in which Harris tried to convince Ford not to testify against his son. Epting further stated that she thought Ford was scared because Harris "just kept on yelling and screaming." Epting eventually recanted statements that she had previously made, alleging that Smith threatened her to cooperate and offered Ford $20,000 to testify against Harris's son.

During his interview with Zambia Ford, Johilda Ford's daughter, she said she and her sister, Keisha, were present during an angry exchange between Harris and Johilda Ford. She said that her mother was scared and that Harris was yelling and moving closer to her while swinging his arms, causing Zambia Ford to fear that he might hit her mother. She thought Harris was attempting to intimidate Johilda Ford into changing her story.

Lamarcus Sanders was also present during at least part of the exchange between Harris and Ford, although there is no evidence that Zambia Ford or Epting told Smith of Sanders's presence. Sanders has admitted that Harris and Ford had an argument, and he left after he thought "somebody was going to get to fighting."

Based on the interview statements from Johilda Ford, Epting, and Zambia Ford, detective Smith prepared an affidavit for an arrest warrant for Eddy Harris, Sr. After review from the prosecutor, the affidavit was presented to the Little Rock District Court's criminal division. Smith then contacted Harris and informed him of the arrest warrant, and he voluntarily surrendered at the

Little Rock Police Department headquarters on July 16, 2004. An officer placed Harris in handcuffs and transported him for booking at the Pulaski County Regional Detention Facility.

On September 16, 2004, the prosecuting attorney's office charged Harris with attempting to intimidate Ford and influence her testimony, in violation of Ark. Code Ann. § 5-53-109. Pulaski County Circuit Judge John Langston then issued a bench warrant for Harris's arrest on that charge on September 16, 2004.

On March 17, 2005, Eddy Harris, Jr. was found guilty of two counts of capital murder. In that trial, Johilda Ford testified that she overheard Harris, Jr. discussing the murders with Harris, Sr. and that Harris, Jr. had told her that he had "shot the white boy." *See Harris v. Arkansas*, 366 Ark. 190, 234 S.W.3d 273 (2006). On April 18, 2005, the circuit court granted the prosecuting attorney's motion for an order of *nolle prosequi* on the charges against Harris, Sr. In the accompanying affidavit, the prosecuting attorney explained that he did not lack sufficient evidence on intimidation of a witness, but that he was using his prosecutorial discretion not to prosecute Harris, Sr. after completion of his son's trial.

### III.

Harris argues that the City of Little Rock, Smith, Johilda Harris, and Lawrence Johnson, the Little Rock Chief of Police, violated his Fourth, Eighth, and Fourteenth Amendment rights. On July 3, 2007, this Court ordered Harris to provide within thirty days an address at which Johilda Harris could be served. Harris never provided an address for service of Johilda Harris and failed to comply with the Court's order. Federal Rule of Civil Procedure 4(m) requires a court to dismiss a claim where the defendant is not served within 120 days after the complaint is filed. Therefore,

Harris's claims against Johilda Harris are dismissed.  For the reasons stated below, Harris's claims against the City of Little Rock, Smith, and Johnson also fail.

Harris argues that his Eighth Amendment right to be free from cruel and unusual punishment was violated.  The Eighth Amendment, however, prohibits punishment that is grossly disproportionate to the offense of the conviction.  *U.S. v. Paton*, 535 F.3d 829, 837 (8th Cir. 2008) (citing *Solem v. Helm*, 463 U.S. 277, 288, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983)).  Harris was not convicted of a crime, and thus his claim for violation of his Eighth Amendment rights must fail as to all defendants.

Harris also alleges that his Fourth and Fourteenth Amendment rights were violated when he was arrested without probable cause.  Johnson and Smith argue that they are shielded by qualified immunity.  In a qualified immunity analysis, a court considers two issues: (1) taken in the light most favorable to the plaintiff, whether the facts alleged show that the defendant's conduct violated a constitutional right; and (2) if so, whether the right was clearly established.  *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005).

An officer is entitled to qualified immunity unless the warrant application "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000).  The standard is whether a reasonable officer could have believed that probable cause existed.  *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991).  Detective Smith interviewed Epting and Zambia Ford after Johilda Ford voluntarily came to the prosecuting attorney's office to report Harris's conduct. Johilda Ford told Detective Smith that Harris had threatened her, yelled at her, and attempted to coerce her to change her story regarding his son's criminal conduct.  Smith then interviewed both Epting and

Zambia Ford, whom Johilda Ford said were present during her argument with Harris. Epting and Zambia Ford confirmed the substance of Johilda Ford's statements and believed that Harris was attempting to convince Johilda Ford to change her story. After presenting this information in an affidavit, Smith obtained a valid arrest warrant. In this case, the totality of the circumstances demonstrates that it was prudent for Smith to believe that Harris had committed a crime. *U.S. v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997) (stating that, in reviewing whether an arrest was supported by probable cause, a court must determine from the totality of the circumstances whether a prudent person would believe that the defendant had committed or was committing a crime). Because Smith had probable cause to obtain and enforce the arrest warrant for Harris, he did not violate Harris's Fourth Amendment rights, and summary judgment is therefore granted in favor of Smith on that claim.

Smith is also protected by qualified immunity from Harris's Fourteenth Amendment claims of deprivation of liberty without due process of law. In analyzing a Fourteenth Amendment claim, a court must consider whether the actions were arbitrary or shocking to the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 1717, 140 L. Ed. 2d 1043 (1998). The plaintiff must show that the government action was "truly irrational," or "something more than . . . arbitrary, capricious, or in violation of state law." *Anderson v. Douglas County*, 4 F.3d 574, 577 (8th Cir. 1993) (quoting *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992)). Smith's actions do not rise to the level of "truly irrational" or "conscience shocking," as they are at most arbitrary or capricious. Therefore, Smith's actions do not amount to a violation of Harris's Fourteenth Amendment rights, and summary judgment is granted in favor of Smith on that claim.

Johnson is also protected by qualified immunity from both the Fourth and Fourteenth Amendment claims. In reviewing claims of constitutional violations by a supervising officer, a plaintiff must show that the defendant was deliberately indifferent in failing to train or supervise the offending actor, and such failure to train or supervise caused the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989). Because Smith did not violate Harris's Fourth, Eighth, or Fourteenth Amendment constitutional rights, any failure to train or supervise Smith did not result in a violation of Harris's rights. Even if Smith did violate one or more of Harris's constitutional rights, Harris must show that Johnson was deliberately indifferent in failing to train or supervise Smith. *See also Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806-07 (8th Cir. 1994). Harris alleges only that Johnson had a reputation in the community of not disciplining officers who have committed civil rights violations, but he offers no specific facts supporting this allegation. The undisputed facts show that, during Johnson's tenure as Chief of Police, Smith received extensive training. When initially hired, Smith participated in a training program consisting of eight weeks and 320 hours of training, including training on search and seizure law, probable cause and arrest, interview and interrogation, and civil rights. His training also included instruction on the Little Rock Police Department's rules, regulations, general orders, and divisional operating procedures. Each year, Smith was required to attend a refresher course. Beginning around 1994, the annual refresher course involved forty hours of instruction and cultural diversity and sensitivity training. Smith worked for the department for thirty years, and in that time he was never disciplined for violation of department rules or regulations. Harris provides no specific facts supporting his allegation that Johnson had a reputation for or engaged in a pattern and practice of failing to discipline police officers who violated the constitutional rights of African-Americans.

Without specific facts indicating that Johnson failed to properly train or supervise Smith, and based on Smith's extensive training and lack of a disciplinary record, this Court cannot conclude that Johnson was deliberately indifferent or that any deliberate indifference was the cause of Harris's alleged constitutional violations.

Harris's claims against the City of Little Rock also fail because the City is protected by municipal liability in this case. Although a municipality may not be held vicariously liable for unconstitutional acts of its employees, it may be held liable if those acts implement or execute an unconstitutional municipal policy or custom. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). The plaintiff must show that the custom or policy was the "moving force" behind the constitutional violation. *Id.* Here, Harris has failed to show that Johnson or Smith violated his constitutional rights, and therefore there is no underlying constitutional violation for which the City of Little Rock can be held liable.

Even if Johnson or Smith had violated one or more of Harris's constitutional rights, Harris has not shown that their unconstitutional acts implemented or executed an unconstitutional policy or custom of the City of Little Rock. The Eighth Circuit has defined "policy" as "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler*, 165 F.3d at 1204 (citing *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998)). Harris has identified no policy in which the City of Little Rock deliberately chose to fail to properly supervise or train its employees. Rather, the undisputed facts show that the City of Little Rock has many training and regulatory policies in place for the specific purpose of ensuring the proper supervision and training of its employees.

Harris also has not shown that the City of Little Rock had an unconstitutional custom that resulted in a violation of Harris's constitutional rights. To prove the existence of a municipal custom, a plaintiff must show: (1) that the governmental entity's employees were engaged in a continuing, widespread, and persistent pattern of unconstitutional misconduct; (2) that the governmental entity's policymaking officials were deliberately indifferent to or tacitly authorized such conduct after receiving notice of that misconduct; and (3) that the custom was the moving force behind the constitutional violation. *Mettler*, 165 F.3d at 1204 (citing *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998)). Harris has not alleged any specific facts supporting his allegation that either the City of Little Rock or Johnson was engaged in a custom of failing to train or supervise their employees. There is no evidence of continuing, widespread, and persistent constitutional misconduct. Smith had not been disciplined for constitutional misconduct during the entirety of his thirty-year employment. Furthermore, even if Smith had been engaged in constitutional misconduct, Harris has alleged no specific facts showing that Johnson or the City's policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. The defendants have responded to Harris's general allegations with specific facts showing the training procedures, rules, and regulations that the Little Rock Police Department has enacted for its employees. Harris has not shown that any City of Little Rock custom resulted in a violation of his Fourth or Fourteenth Amendment constitutional rights. Therefore, summary judgment is granted in favor of the City of Little Rock on Harris's constitutional claims against it.

Finally, Harris claims that the City of Little Rock, Johnson, and Smith conspired to bring about the unlawful and unconstitutional arrest and detention of Harris because of his race, in violation of 18 U.S.C. § 1985. To state an equal protection claim under § 1985(3), a plaintiff must

9

allege that the defendants agreed to violate his civil rights and that the conspiracy was fueled by a class-based, invidiously discriminatory animus. *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996). To succeed on his conspiracy claim, Harris must demonstrate some discriminatory purpose: that the defendants selected a particular course of action "because of" its adverse effects upon an identifiable group. *Id.* at 1079-80. In this case, the only factual basis for Harris's conspiracy claim is his allegation that Johilda Harris was a paid informant in the case against his son. However, Harris has provided no evidence that Johilda Harris was a paid informant and has no other evidence of an agreement linking the City of Little Rock, Johnson, Smith, and Johilda Harris in a conspiracy to bring about his unlawful and unconstitutional arrest. Therefore, summary judgment is granted in favor of the defendants on Harris's equal protection conspiracy claim.

Because the Court has jurisdiction over Harris's federal constitutional claims, the Court can exercise supplemental jurisdiction over his state-law claims for false arrest, false imprisonment, malicious prosecution, defamation, and intentional infliction of emotional distress or outrage. 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy . . . ."). If the district court dismisses all claims over which it has original jurisdiction, however, it may decline to exercise supplemental jurisdiction over state-law claims. 28 U.S.C. § 1367(c)(3). Out of deference and respect for the courts of the State of Arkansas, this Court will exercise its discretion to decline to exercise supplemental jurisdiction with respect to Harris's state-law claims. *Concor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (stating that, after dismissing the federal claims, the district court should have exercised its discretion to decline pendent jurisdiction because of "the necessity to provide great deference and comity to

state court forums to decide issues involving state law questions."); *Roeben v. BG Excelsior Ltd. P'ship*, No. 4:06CV01643, 2008 WL 54916, at *3 (E.D. Ark. Jan. 3, 2008). Therefore, those claims will be dismissed without prejudice.

## CONCLUSION

Harris's claims and his supporting evidence against the defendants are insufficient to survive summary judgment. Harris failed to comply with this Court's order to provide an address for service of process for Johilda Harris, and his claims against her are therefore dismissed. Because Harris was not convicted of a crime, the Eighth Amendment protection against cruel and unusual punishment does not apply to him in this case. Regarding Harris's § 1983 claims for violation of his Fourth and Fourteenth Amendment rights, his allegations are insufficient to supersede the protections of qualified immunity afforded Johnson and Smith and of municipal immunity afforded the City of Little Rock. Harris's § 1985 equal protection conspiracy claim is also unsupported by sufficient evidence. Finally, because this Court has dismissed all claims over which it exercised original jurisdiction, it declines to exercise supplemental jurisdiction over Harris's state law claims, which are dismissed without prejudice. Therefore, summary judgment is granted in favor of the defendants on Harris's federal constitutional claims.

IT IS SO ORDERED this 20th day of October, 2008.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE